**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 25-cr-265 (DLF)** |
| | **:** | |
| **GLENN WILLIAMS,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The Defendant entered a bank and attempted to rob it, handing the teller a note that said "This is a Robbery! Do not hit alarm and no dye pack Please do as I say nobody will get 'shot!'" The Defendant has been previously convicted numerous times for other robberies, thefts, larcenies, and burglaries. For the reasons stated herein, the Government respectfully requests that the Court sentence the Defendant to a sentence of 50 months of imprisonment, followed by three years of supervised release, which is below the Guidelines but pursuant to the range (under)calculated by the parties in the plea agreement.

## BACKGROUND

On August 29, 2025, at approximately 4:07pm, the defendant Glenn Williams, walked into the Bank of America located at 5201 Wisconsin Avenue NW in Washington, D.C. 20015. The defendant waited in line to speak with the bank teller. The bank teller worked behind a desk with a deal tray that is protected by a plexiglass window. When the customer in front of the defendant left the teller, the defendant approached the bank teller and slipped him a handwritten note, along with a plastic bag, through the deal tray. The note read "This is a Robbery! Do not hit alarm and no dye pack Please do as I say nobody will get 'shot!'" A dye pack is a bank security device disguised within a stack of real currency. When a robber takes the pack out of the bank, a radio

1

signal or timer is triggered, causing the pack to explode, releasing an aerosolized colored dye and sometimes tear gas. This stains the stolen money, the robber's clothing, and skin, making the money useless and marking the robber for easy identification.

The bank teller read the note and then scanned the defendant for any possible weapons. When the bank teller did not see any weapons, the bank teller walked away from the window and behind a wall before calling 911. Shortly thereafter, around 4:13pm, the defendant left the bank. The defendant entered the elevator at the Friendship Heights Metro Station located at 5337 Wisconsin Ave NW, Washington, D.C. Inside the elevator, the defendant was recorded removing his sweatshirt and putting it in his backpack. The defendant then got onto the metro towards Shady Grove.

Metro Transit had observed that the Defendant was using a Smartrip Metro Access Card and determined the number was "01671574606494383364". The number was red flagged in the system so that Metro Transit Police could attempt to stop anyone who uses that Smartrip card with instructions to notify MPD's Second District Detective's office. A review of the Smartrip card's transaction history on August 29, 2025, showed entry at Deanwood Metro Station at 15:12:00 hours, exit at Friendship Heights Metro Station at 15:54:55 hours North Side (prior to the attempted robbery), entry at Friendship Heights Metro Station at 16:17:44 hours South Side, and exit at Gallery Place Chinatown Metro Station at 16:40:31 hours East Side (after the attempted robbery).

Two days later, on August 31, 2025, Smartrip card 01671574606494383364 was swiped at the Deanwood Metro station which alerted Metro Transit Police. CCTV showed that the defendant boarded a Vienna bound train and was on train car #7703. Transit Officers responded to Stadium Armory metro station and stopped the incoming westbound train. The defendant was

located and removed from the train. The defendant was wearing some of the same clothing that he wore during the attempted robbery two days prior. During the attempted robbery, there was no gun observed on the defendant.  The defendant was not arrested in possession of any weapons.  No property or money was taken from Bank of America during the attempted robbery referenced above.

## PROCEDURAL HISTORY

On August 31, 2025, the Defendant was arrested by law enforcement officers at the Stadium Armory metro station. On September 3, 2025, the Defendant was indicted by a federal Grand Jury for one count of Attempted Bank Robbery in violation of 18 USC § 2113(a). On March 18, 2026, the defendant pled guilty to the Indictment pursuant to a written plea agreement.

## SENTENCING GUIDELINES

The Government concurs with the Pre-Sentence Report ("PSR") calculation that the Defendant's base offense level is 20, with a two-point enhancement because the offense involved a financial institution, and a two-point enhancement because the offense involved a threat of death, and that the Defendant accepted responsibility early enough in the case so as to qualify for a three-point reduction to his offense level. PSR at ¶¶ 17-26.  The Government also concurs that the Defendant is not eligible for a zero-point offender adjustment. PSR at ¶ 27.  Thus, based upon the final PSR released on June 16, 2026, the resultant total offense level of 21, along with a Criminal History Category of VI, results in a corresponding range of imprisonment under the Guidelines of 77 months to 96 months.[1]

---

[1] The parties' plea agreement miscalculated the Criminal History score by not assigning 3 points under U.S.S.G. §4A1.1(a) for the 1/7/2007 Fairfax County Grand Larceny conviction and 3 points for the 4/26/2007 Arlington County Grand Larceny conviction.  Additionally, because the defendant committed the instant offense under a criminal justice sentence, one additional point was added.  With an additional 7 points, the defendant's total criminal history points increased from 6 (as calculated in the plea agreement) to 13, resulting in a Criminal History Category

## LEGAL STANDARDS

When determining the appropriate sentence, the district court should consider all of the applicable factors set forth in Title 18, United States Code, Section 3553(a). *See United States v. Gall*, 552 U.S. 38, 49-50 (2007). Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). *United States v. Rita*, 551 U.S. 338, 348-50 (2007). The Section 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment; (3) the kinds of sentences available; (4) the sentencing range established by the Sentencing Guidelines; (5) any related Sentencing Commission policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need for restitution to any victims.

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in *Blakely v. Washington*, 542 U.S. 296 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory. *Booker*, 543 U.S. at 245. Nonetheless, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. *See Gall*, 128 S. Ct. at 598 ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark"). The Guidelines are the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions. *See Rita*, 551

---

of VI, instead of III as calculated in the plea agreement.

4

U.S. at 338; *see also* United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); 28 U.S.C. § 994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 438 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases"). In addition, the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns." *Booker*, 543 U.S. at 264 (the Sentencing Commission will continue "collecting information about actual district court sentencing decisions . . . and revising the Guidelines accordingly").

The Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). Any Guidelines calculation is based on the individual characteristics of the offense and the offender, as required by Section 3553(a)(1). The Guidelines themselves thus seek to implement—in a fair and uniform way—the offense specific characteristics that, themselves, comprise the "individualized assessment" the Supreme Court commends in *Gall*. *See Gall*, 552 U.S. at 50.

## ARGUMENT

A sentence of 50 months of incarceration followed by three years of supervised release in this case is appropriate given the attempted robbery and the threats that accompanied it, the defendant's history and characteristics, and the defendant's prompt acceptance of responsibility and progress towards rehabilitation.

### 1.    The Nature, Circumstances, and Seriousness of the Offense

Although the Defendant was not armed and only expressed a threat of violence through a

handwritten note, his conduct is nonetheless serious.  Any reasonable bank teller or bank patron

aware of the note would perceive imminent harm and be placed in fear based on the Defendant's

demand for money inside a bank.  The Defendant also implied through his note that he had the

means to shoot, thereby creating more fear in the reasonable person.



*Left to right: photo of the handwritten note passed to the teller; still from CCTV of the Defendant passing the note to the teller.*

The Defendant, to his credit, did shortly exit the bank peacefully and quietly, after the teller

stepped away from the window with the note and he did not make any further threats or attempts

to rob the bank.  Once the Defendant left the bank, he walked to the Friendship Heights metro

station and entered an elevator, where he was recorded removing his hat and outer sweatshirt—in

a clear attempt to change his appearance to evade law enforcement detection.  The conduct of

attempting to rob a bank is always serious, however, the Government recognizes that the

Defendant's specific actions in carrying out his intent in this case, relative to other possible means

of robbing a bank, was considerably less violent.





*Left to right, top to bottom: Defendant entering elevator; Defendant pulling sweatshirt over his head; Defendant removing sweatshirt over his arms; and Defendant captured on Metro CCTV after he removed his outer clothing worn during the attempted robbery.*

### 2.    The Defendant's History and Characteristics

This factor—the defendant's criminal history—is the most concerning and alone warrants the government's requested sentence. Between the ages of 18 and 55 (Defendant committed the instant offense at age 63), the Defendant received 16 criminal convictions, the vast majority of which were for similar offenses such as Theft, Burglary, Grand Larceny, Robbery and Armed Robbery. PSR at ¶¶ 32-45. On top of that, as an adult between the ages of 19 and 53, the Defendant was arrested an additional 13 times, many of which were for the same type of crimes. Sometimes the Defendant's conduct involved a dangerous weapon. In May of 2016, the Defendant committed a string of at least four robberies, starting with an armed robbery at a 7-11 convenience store, stealing 100 packs of cigarettes, while displaying a knife and threatening an employee. These robberies occurred across Prince George's County, Maryland and Alexandria, Virginia on May 19, May 22, May 23, and May 26, 2016. PSR at ¶ 44-45.

This pattern of repeated theft/burglary/larceny spanning decades with the frequency seen in his record is extremely troubling and demonstrates a high chance of recidivism and low chance of future rehabilitation. The Defendant has had numerous chances to cease his penchant for theft, robbery and robbery, but has not done so. The Defendant has been convicted of one or the other of these crimes in the years of 1983, 1990, 1991, 1994, 1997, 2005, 2007, 2016, and 2018. PSR at ¶¶ 32-45. Between these periods, the defendant spent some periods of time incarcerated, with the most significant sentence for his 2016 conviction for Armed Robbery in Prince George's County where he displayed a knife at a 7-11 robbery. There the Defendant was incarcerated between 2016 and November 26, 2024, which also explains the lack of convictions during this

time period. PSR at ¶ 44.  About nine months after his release from serving a substantial sentence for Armed Robbery (15 years sentence, 5 suspended), the Defendant entered the Bank of America in August 2025 in this instant case with the intent to rob it.  Moreover, the Defendant's record on court-mandated supervision is troubling. The Defendant was on probation at the time of his arrest for this instant case, has tested positive for drugs while on probation, and has failed to report while under probation. PSR at ¶¶ 38, 43, and 44.

Despite this significant and extensive criminal history of essentially repeat conduct, in balance with the instant offense lacking an actual firearm or threats beyond the note, the government still believes a sentence within the range of 44 to 57 months as contemplated by the plea agreement is appropriate, instead of the much higher Guidelines range of 77 to 96 months given the Defendant's thus-far substantial demonstration of sobriety and compliance with drug testing and other conditions.  The Defendant's progress, though impressive, is not perfect.  The Defendant's probation officer from his Maryland case reported that he tested positive for cocaine in March 2026. See also PSR ¶ 44. This is particularly concerning, and cuts against a lower sentence, given the Defendant's representation in past hearings that his thefts and robberies were a means to fuel his drug addiction.  While this is the first positive drug test since his release on September 10, 2025 (where he immediately tested positive for cocaine and marijuana on September 12, 2025, and again on September 15, 2025), it is nonetheless troubling because it shows that the Defendant can and has only remained sober for 6 consecutive months.  Below is the drug test conducted through his Maryland supervision in March 2026.



In sum, a meaningful period of incarceration within the range of 44 to 57 months is necessary despite the relatively mild manner of how he conducted the instant attempted robbery given that prior sentences for the exact same kind of conduct have proved ineffective at deterrence and rehabilitation. The government's requested sentence is already a downward variance from the actual Guidelines range of 77 to 96 months.

**3.  The Need to Promote Respect for the Law and Deterrence**

10

As noted above, the Defendant has been convicted countless times for the same or similar crimes as the one he has pleaded to in the instant offense. The Defendant was sentenced to a lengthy period of incarceration in 2016 for a 7-11 armed robbery with a knife.  Despite having received a 10-year sentence (15 years all suspended by 5), the Defendant returned to the same criminal activity within a year of being released.  While the instant offense did not involve an actual weapon, it is nonetheless an attempted robbery and his past sentences for the same type of conduct should be considered when considering an appropriate sentence here.  *See, e. g., Qualis v. United States,* 373 F. Supp. 2d 873, 877 (E.D. Wisc. 2005 ) ("It is appropriate for a court, when considering the type of sentence necessary to protect the public and to deter future misconduct, to note the length of any previous sentences imposed."); *see also United States v. Molina,* 952 F.2d 514, 519 (D.C. Cir. 1992) (noting that repeated commission of the same offense may warrant a higher sentence than previously given to the same defendant for purposes of deterrence); *see also United States v. Guzman-Najera*, 440 Fed. Appx. 391 (5th Cir. 2011) (affirming sentence of 57 months for illegal reentry when defendant had previously served two 30-month sentences for the same offense).

A sentence of 50 months of incarceration followed by three years of supervised release is necessary to address the Defendant's recidivism and promote respect for the law.  After all, this is the Defendant's ***thirteenth*** conviction as an adult for a theft, larceny, burglary, or robbery.  The Defendant needs long-term and persistence substance abuse treatment so that he remains sober and refrains from making bad decisions to steal and rob to fuel his addiction.  The Bureau of Prison's Residential Drug Abuse Program (RDAP) is an intensive treatment program and would be available to the Defendant while in custody.

    **4.**    **Other factors**

As noted in the PSR, ¶ 139, the average length of imprisonment for a similarly situated defendant is 71 months and the median length is 77 months.  Here, the Government's requested sentence is already significantly lower than those numbers.

**5.      Victim Impact**

The government has communicated with the bank teller on June 26, 2026, about the sentencing date and has also attempted to reach additional members of the Bank of America located at 5201 Wisconsin Ave NW, Washington, D.C., but to date, has not received any victim impact statements.

<u>**CONCLUSION**</u>

The Defendant's conduct is serious and merits a commensurate sentence while accounting for the Defendant's pretrial compliance and substantial sobriety, in addition to acknowledging the attempt and unarmed nature of his offense. The Defendant threatened harm via a note to others during the commission of an attempted robbery, and the Defendant has a decades-long history of stealing and robbing. For the foregoing reasons, the Government recommends that the Court sentence the Defendant to 50 months of incarceration followed by three years of supervised release.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:      */s/ Iris Y. McCranie*
IRIS Y. MCCRANIE
Assistant United States Attorney
NY Bar No. 5011234
601 D Street, NW
Washington, DC 20530
(202) 252-7828
Iris.mccranie@usdoj.gov